Morning, Mr. Fulton. Morning, Your Honor. We are here asking that the court reverse and remand the convictions of Randy Never Misses A Shot on various grounds set forth in our brief. The first one I'd like to address is the district court's insertion of itself into the advocacy process by, at the end of witness testimony proffered by the government, immediately calling counsel forward to a sidebar and informing the prosecutor that in the district court's judgment the elements of the offense had not been proven and the directive verdict would have to be entered, and additionally directing the prosecutor what additional proof was necessary and directing the prosecutor to reopen its case at that point, which the prosecution did. It's our position that this requires a reversal of these counts because the district court abandoned its neutral role as arbiter and instead became an advocate. The jury wasn't exposed to any of that, was it? The jury was not able to hear what was said at sidebar, Your Honor, but, of course, they could see the sidebar and then they saw immediately after the sidebar, which the district court called that the prosecutor, after having said done with the witness, immediately continued with the examination. So they saw what happened. They didn't hear what was said at sidebar. But I think it is important in this instance that, and one of the criteria that we look at in these instances, most of which deal with the district court's actually actively asking questions, is that the jury did see a participation by the court, which suggested that it was directing the presentation of the case. Immediately after the government tenders the witness, the district court calls for it on its own volition. Sidebar isn't requested by counsel, and then immediately thereafter, counsel goes back and the prosecutor resumes questioning on a different front. So I think the jury sees in that instance that the district court has to some degree directed and can infer the district court is directing. I think, too, then. Well, doesn't the district court have the ability to intervene in the sense of there's some difficulty of getting a particular witness to testify, especially after some time has ensued, depending upon the nature of the witness and so on? I think, Your Honor, that the court has been consistently clear that the district court can ask clarifying questions. I mean, if you look at Bland and Singer said in their briefs, the court consistently uses language that involvement in questioning should be rare and isolated clarification. I would contrast what happened here with a case I was watching earlier this week in front of the same district court judge that involved a lot of different exhibits and diagrams of an arson scene. In that instance, the district court frequently would say, counsel, would you identify the exhibit because that wasn't clear. In one instance, they clarified and said when the witness was pointing to the top of the exhibit and that's north, correct, just to orient the jury. It's very different than here, and the analogy of judges as umpires gets overused, but I think it's very different here where the district court essentially told the prosecutor go throw a fastball. In what way did the court, particularly in the eyes of the jury, cease to be the referee and become a participant? Judge Smith, I would say two things about that. I think, one, the presentation to the jury of how this happened, that the prosecutor says no further questions, the court called the sidebar, not counsel, and then immediately thereafter, after they see the sidebar happen, the prosecutor resumes questioning and adds additional facts. I think an inference from that is the direction by the court, and then also if you look . . . Was there anything about it that prevented the defense from having an adequate cross-examination? No, but I think the real problem here is that, and if you look at the Singer case, I think Judge Lay's concurrence really identifies why this is a problem. We have an adversarial system, not an inquisitorial system. This doesn't seem like the kind of case where the judge kind of interjects him or herself by commenting on credibility of witnesses and the like, when some of the cases we've seen where a judge comes out and says they're lying. Absolutely, and it is different in that, I would agree, the judge did not make comments in front of the jury that reflected to the jury an abandonment of neutrality. What the judge did do is abandon neutrality by directing presentation of the prosecution's case. I think to compare this to before the examination began, if the prosecutor was called up at the judge's request and the judge said, make sure you cover this element, this element, this element, and you should ask it this way, we would all scratch our head and say that's not what judges do. And that's essentially exactly what happened here. The judge, after the prosecutor, who has an adversarial role, tendered the witness, came up and said, stop, you've missed this and this and this, and you need to go back and cover it. That's not the judge's role to come in and insert and guide the presentation of the case. Would the same be true if the judge did that for the defense? If a defense attorney overlooked an element of an assertion of an affirmative defense and the judge says, hey, maybe you want to think about putting on this extra witness or asking maybe you have a little bit more you want to present, would that have been improper as well? Absolutely, Your Honor. If it resulted in a reversal of an acquittal. Well, you could. I mean, I don't think you can have a reversal of an acquittal. But I mean, I know what you're saying. I would agree. That bad choice of . . . If I mess up that, it's circuit lawyer, and I think the defenders will all kick me out if I get that messed up. I agree absolutely that had the district court judge, for example, in sexual contact with a person with an age gap, statutory rape, if the district court judge had called up a defender after they had tendered a witness who was there about reasonable belief of age and said, well, you didn't cover this, this, and this, that would be error. It would be because the judge would be abandoning their neutral role and be guiding the presentation of the evidence. And really, that's when you look at a lot of these cases. We don't have any that are exactly this set of facts. Most of them are, in fact, the judges asking questions or making comments. But in all of them, the key tipping point is when the judge abandons the neutral role or simply, I think, the questions we see, like I gave the example of before, where it's simply making the trains run on time and clarifying record on certain documents. When the judge takes on the mantle of persuasion or guiding presentation of the case, that's when you cross the line, and that's what happened here. And after the sidebar, to go back to the point about what the jury would perceive, the district court did, at one point, after there was an objection lodged about whether there was testimony on touch you, said, let's first ask, did his penis touch her? So I think you have the sidebar called by the court. You have the prosecution resuming and expanding testimony after it attended the witness, and then you have active participation in some of the examination by the court at that point. Well, some of these, from the standpoint of the court, were difficult witnesses that perhaps needed to have some direction about what they were being asked. Wouldn't that be a fair statement? I would agree, Your Honor, that one of the witnesses, not this one, was a developmentally delayed woman. But, again, it would be different if the court was clarifying a question posed by counsel, asking, do you understand? Simply, I would say, making evidence come in cleanly and understandably. It, again, is very different, regardless of the capacity of the witness, if the district court, so to speak, comes down off the bench and says, do this, ask these questions. This is, I think, not an instance where the district court was trying to clarify communication between counsel and a witness. It was directing what counsel needed to ask, which is, I think, very different because it's directing how the case is presented. I do want to touch briefly on a second issue that was involved here with this particular one, and it's one raised in the government's responsive brief that this is harmless error that there was sufficient evidence before. We just simply don't agree with that. If you look as to what was said by this witness, and this was a count of abusive sexual conduct, specifically that there was an intentional touching through the clothing, this witness described going under a truck topper with the defendant, and she says, could you feel any part of his body touching your groin area? And this is at page 261, line 11 of the transcript. She says yes. It asks which part, like between his thighs. Like between his thighs, yes. And that's it. I think this is an area where these sexual abuse statutes are ultimately very precise. They require very precise descriptions of what happened. And it's key that the court go back and look at the reddest case that we've cited, which was an abusive sexual contact case involving penetration. In that instance, the witness described being touched around her vaginal area, but what she described was he touched me like, this is a quote from the case, like close to my hole. The court reversed that conviction because there was ultimately no evidence of penetration. I think both as to this count and as to count three, which we've raised on sufficiency, there is not sufficient evidence, and there certainly wasn't prior to the district court calling counsel forward for the jury to find that there was the specific contact required under this offense or under count three. To just dwell briefly on count three and to be clear on that, this is a count of aggravated sexual abuse requiring skin-to-skin contact, not through the closing. And at page 175 of this transcript, I will read the entirety of the key examination here. Questions posed, what did your uncle do? Touched me. Where did he touch you at? My vagina. Fast forward down to, he started touching me there and touched me on my vagina. That was it. That's all I remember. Much like in Redist, there was a requirement of testimony about penetration and a discussion of touching around the vagina was not adequate. It's not adequate here because there was ultimately no testimony about skin-to-skin contact. The district court observed in the Rule 29 motion on this that this was a very close case. The jury sent out a specific question saying, was there evidence of skin-to-skin contact? The district court sent back a note to the jury that said, you have to rely on your recollection. But the jury identified that this ultimately was lacking and there just is not evidence from which they could conclude. The judge's response was correct in that note. We didn't raise that issue, Your Honor. We objected down below, but we didn't raise that. And it's, I would agree, the standard response in those instances. But she also didn't say, he touched the clothes over my, I mean, she said, touched my vagina. Again, Your Honor, I would agree with that. In the light most favorable, doesn't that suggest skin-to-skin? No, because much like in Redist, you know, I would argue that the testimony in Redist was even stronger because she talks about being touched around, quote, her hole. But didn't that case require penetration? It did, but I think in that instance, she's describing actual skin-to-skin contact and touching in that area. Here she just says, touch me on my vagina, and it requires skin-to-skin contact. The government's argument certainly is that the jury could reasonably infer this. I think on this record, we're moving from a reasonable inference to a leap of faith. There just is no testimony from which a jury can reasonably infer that. If I could, I'd reserve the balance of my time for rebuttal, Your Honor. Okay. Mr. Coloner. Thank you, Your Honor. Please support counsel. I'm Kevin Coloner from the District of South Dakota U.S. Attorney's Office, here arguing for the government. We believe that all the convictions here should be affirmed. I'll go to the first issue that's raised in the briefs. The record was here, and with all due respect to opposing counsel, he left off a question and an answer at the end of his description as to what exactly this young witness had said before the sidebar, and that's that she was asked, could you feel any part of his body touching your groin area? She said yes. Which part of his body could you feel on your groin area? It would be his, like between his thighs. And here's the question that was left off. When you describe the area between his thighs, is this his private parts? Response, yes. Now, when they go back to sidebar, it appears, and if you check the record, I think the record bears this out that the judge, with all due respect to the district court, missed that as well, focused on the question, was there any contact? I think the judge said, well, you know, you've got him on top of her, moving back and forth, but was there any contact? This witness specifically answered questions about that, saying he got on top of me. He started moving back and forth, laying on the ground, his body over hers. My forehead was about to his chin. His hips were a bit over my stomach. There was testimony sufficient to sustain this conviction before the sidebar. In other words, the judge. This would be harmless error. Yes. And the judge, in fact, avoided error by not directing a verdict at that moment. Now, the judge did allow reopening. I think the record is also clear that this. Did the judge direct reopening, or was it requested and then granted? The prosecutor had not requested it. The judge brought it up first, saying, you know, I would allow you to reopen, but I don't think the record is quite there. There was a discussion between the prosecutor and the court at that point on the question of whether the record was sufficient. The prosecutor said, I believe her testimony was that she felt his penis, she said, his private parts on her groin area, which would be his penis over the top. And the judge said, I think the record's not quite there, that, you know, he went back and forth on her. So the judge allows the prosecutor to reopen, suggests the reopening. This is more in the way of clarifying questions. It's the judge and the prosecutor disagreeing about the state of the record. I believe it turns out the prosecutor was correct in terms of the state of the record, goes back, asks a few questions. Of course, this court has held that a judge may himself ask or herself ask clarifying questions. That didn't happen here. That would, of course, be a more close case in terms of the mantle of neutrality that's being displayed to the jury. In U.S. v. Jury, this court said that one of the judge's roles is to ascertain the truth. And, of course, here we're allowing the prosecutor to reopen, to ask questions, then cross-examination occurred. This simply is not a case that involves any of the factors that has concerned this court in the past, with a judge abandoning the mantle of neutrality and taking on the role of a prosecutor. It's somewhat of an unusual case because it covers a lot of time for some of these witnesses. That's very true, Your Honor. It's the nature of a very sad case like this involving multiple counts of child molestation, some dating back decades, with a variety of witnesses. You don't have any eyewitness testimony, aside from the victim witnesses, who are themselves called upon to answer questions about very embarrassing details, some of which happened decades ago. There's no physical evidence. And so is the record sparse at times? Yes, it is. That's the nature of a prosecutor, I believe, trying not to belabor difficult points and having some difficulty with some witnesses. The question, though, for this court to ask is, is there any interpretation that could lead a reasonable-minded jury to find the defendant guilty? The sufficiency of evidence standard as discussed by this court in U.S. v. Hamilton and, of course, a myriad of other cases. We believe that there is sufficient evidence on each and every one of these counts. On count three that was mentioned by counsel, the testimony involved a witness saying, I was touched on my vagina. That was the phrase the second time she was asked about it. Is there a reasonable inference to be drawn? Is there an interpretation that could lead a reasonable-minded jury to find the defendant guilty of skin-to-skin contact? Well, of course there is. On my vagina was the phrase that was used. And so a very reasonable inference from that is that there was skin-to-skin contact. Well, had there been any testimony indicating that she was unclothed? I believe the testimony, she said she woke up in the morning and she went out to get a bowl of cereal and came back, and then he pulled her onto the bed, and that's when he got on her and started doing these things. So there's no specific testimony about that. There's really no specific testimony one way or the other about clothing that she was wearing or wasn't wearing. So, you know, it really is the nature of a case like this, that you have this sort of testimony from witnesses many years back, and sometimes sparse details. But we believe the district court got it right in terms of not directing verdict on these counts. Well, how did all this come to the prosecutor's attention? Because they did happen over a period of time to these individuals. My understanding is that this was an investigation that stretched out over many years. This is a man who had several prior convictions, and they had various witnesses who had been interviewed after being in counseling situations and so forth. The victims ranged in age from the testifying victims from about 12 years old regarding things that happened in the years prior to someone who, you know, was an adult, things happening over decades prior. So the reality here is that all these victim witnesses were family members, and so these are, you know, things that come out in the course of an investigation. I have a good deal of time left. I don't have anything else that I feel like I need to bring to the court's attention aside from what's in our briefing, but I'd be certainly willing to answer any questions that the court has. Thank you, Your Honors. I would agree that I omitted the last question about the defendant's thighs, and the reason I did is because the required specific proof is about the witness's body. If you look at the jury instructions, there's no requirement about what part of the defendant touched her. It is a requirement of what part of that woman is touched. Instruction number 11 addressed this. It required touching of the genitalia, anus, groin, breasts, and her thigh or buttocks. So what part of the defendant's body is at issue is irrelevant, and there's no testimony about what part of this witness's body is addressed in count three. I would say we've dealt a lot about the scope and the sparse details. You know, proof beyond a reasonable doubt and due process don't fade away because of the age of the case, because of the nature of the witnesses, or because of the sensitivity of the testimony. They're constitutional protections for all of us, and they don't drop down because of the nature of the case. Ultimately, in this case, if you look at count three, there's testimony about what happened that extends from line nine to line 24 of page 175 of the transcript. The prosecutor, who had all the resources the Department of Justice had at his disposal, asked very few questions. This is not a question about the sensitivity or compromise of the witnesses. It's about the presentation of the case. The district court notes at one point in the sidebar that this was a, quote, relatively inexperienced prosecutor, close quote. It was a prosecutor who had been in private practice for years before, but at that point the district court jumped in and helped. That's not allowed. And in this instance, we deal with neutrality, both the appearance to the jury and the actual neutrality of the court. In this instance, in a clear and definite way, the district court abandoned neutrality and suggested and directed how to present the case, and that is not allowed. Lastly, Your Honors, I would just note that when you look at this issue of whether there was sufficient evidence, again, it's important to look at the exact elements. And as to count four, there wasn't testimony about which part of this individual woman's body was touched. As to count three, there was no testimony about clothes being off, touching under the skin. There was no testimony about skin-to-skin conduct, which was required. For those reasons and the reasons identified in our brief, Your Honor, we request that the district court reverse the convictions and remand with appropriate instructions. Thank you, and that concludes the hearing.